All right, we have Miss Renee and Mr. Cook. Can you both hear me? Yes. Yes. Are you able to hear me? Can I hear? Can you? Did you just speak? I'm Patricia Renee. Is everyone able to hear me? Yes, I can hear you. Okay, we'll proceed. Uh, and Miss Renee, we'll start with you. Thank you. Good morning. My name is Renee. I'm also known as Julie, Patricia Naval. If that appears on any of the pleadings, um, I'm here today on behalf of Mr. Travis Ball, who has raised several issues for the course review on appeal, uh, whether or not this prosecution is born of vindictiveness, whether or not it is barred by double jeopardy, whether or not the, um, the guidelines were properly calculated and whether or not the facts and circumstances of the case. Warrant a upward variance under the 35 53 factors regarding the vindictive prosecution issue. Mr Ball, as everyone is aware, was charged with capital murder of a police officer, Special Agent Walter in Virginia State Court. Mr Ball successfully negotiated a plea agreement in that case that resulted in his receiving a sentence of 36 years, and he was not prosecuted for the firearm. Um, it is our position that as a result of that, um, the prosecution, the government came, um, after the fact and charged him with the offense of possession of firearm by convicted felon in this case, um, purely to tack on additional, uh, time to an already 36 year sentence. We base that argument on the fact that again, Mr Ball has successfully negotiated a pretty good plea deal for himself. The prosecution brought this, um, the government brought this prosecution after the state case that ended when it had the ability to bring it in lieu of the state case, if in fact it had an interest that it wanted to vindicate. When you add to that the United States position throughout this case in terms of how it approached the calculation of the guidelines, it took inconsistent positions specifically to get the maximum punishment it could. On the one hand, it characterized the act as murder in order to try to get the highest range of punishment. Let me ask you, Mr Ball, when he his conduct, uh, violated state law, and he was prosecuted and sentenced under state law, it also violated federal law. Did it not? That's correct. Yeah. And the, uh, uh, the federal prosecutor is a basically saying that the state trial did not sufficiently vindicate the federal interest. The federal interest was the use of a firearm that resulted in the murder. And, uh, and so, uh, if the federal government thought that the state sentence didn't sufficiently vindicate the federal interest, couldn't the federal, uh, well, it could anyway, but, uh, under the Pettit doctrine, the, the federal, uh, prosecutors, uh, as a matter of policy are free to pursue and vindicate the federal interest. Now, why isn't that what occurred here? Well, that is what occurred here. Our position is that even though there's a, um, a policy with the United States to, um, or they give themselves permission to wait until after a state prosecution before bringing a federal one, there is nothing to prevent the government from acting in the state's stead. The federal government, they could have done that easily and could have done that. Exactly. In this case, uh, they also could have, uh, uh, concluded, uh, that the state, uh, should go ahead. It's, uh, uh, uh, there was a state murder charge and, uh, uh, and, uh, hope that the state's, uh, handling of the case, uh, would vindicate the federal interest. But if it turns out that that trial didn't, uh, there was an acquittal or whatever, uh, uh, uh, uh, uh, whatever, uh, happens, it can make a judgment that its interest, the federal interest in enforcing, uh, the, uh, gun violation in a murder context, uh, wasn't sufficiently vindicated and so then it makes the decision to do so. Now, is that what you're calling, uh, uh, uh, vindictive? I think there's several factors here. Number one, again, just let me, let me ask you if your position is that that policy and the carrying out of that policy has been, it constitutes vindictive prosecution. I believe it does, especially that there's nothing about that policy that requires the government to wait to see what happens in state court. Well, nothing requires the government to even prosecute. The government exercises discretion, but the question is, it can exercise, if it's a reason to discretion, in this case, they, the discretion was exercised because the government concluded that its interests were not sufficiently vindicated in the state trial. So, the federal government, which can also prosecute, uh, chose to do so. Correct. That's what happened here, isn't it? I, and under the case law, though, uh, your honor, uh, under the case law, uh, what's your, what's your best case on that? Okay, it's the Goodwin case and Wilson, and one of the factors in determining whether prosecution is vindictive is whether or not the government's actions occur, um, after the state prosecution. That's, that's exactly one of the factors. And so, especially that, like I said, I thought vindictiveness was the effort to punish somebody for exercising a legitimate right. Correct. And I would think the government would say, and we'll hear from the government that they prosecuted to punish a man for his conduct. Not for exercising a right, the conduct being the shooting of an officer. That's exactly correct. They exercise their discretion to punish him, but under the, under the, uh, I believe it's a Goodwin case. One of the factors is the timing of the exercise of that discretion by the government. When, when the government exercises their discretion to exact additional punishment after a state prosecution has occurred, that becomes a presumption that then shifts the burden to the government to justify their actions. And that is because exactly what I was saying, there is no policy law or anything that requires the government to wait. So, if they choose to wait to get, and they bring a prosecution because they're not happy with the sentence. And they could have gone before, because again, if they go in lieu of the state, they have discretion to bring whatever charges they want as many charges as they want. They can vindicate their interest without waiting for the state. If they choose to wait for the state, and then they prosecute adding additional time, they have to justify that. And that's so the vindictive prosecution is not only about adding additional time, it's the timing of the prosecution as well. It's whether or not they're unhappy because the defendant has successfully avoided time that they believe is appropriate, which they could have brought the prosecution from the beginning to make sure that they get the sentence that they want. And so I'm going to just submit the rest on that. And what adds to this vindictiveness is, again, the government taking inconsistent positions in the sentencing calculations. They're trying to, on the one hand, characterize the act as murder to get a higher enhancement. And then, on the other hand, Isn't that the federal interest? In other words, the use of a firearm to murder, that's a normal Caledonian calculation, isn't it? Correct. But then when they flip their position and characterize the act, not as murder, but as an assault in order to get the sixth level enhancement on a victim, that is the government taking an inconsistent position on the same issue, how we characterize the act in order to pile on, to make sure that that enhancement rises to the level of the 10 years that they're trying to get. Well, the sentencing guidelines call for life in this case. Under these facts, the sentencing guidelines call for life. Again, I'm talking about... And, of course, the sentence is capped by the statute, but... ...instead of a concurrent one. All of those factors combined support vindictiveness. And then it shifts to the government to try to explain why this is not a vindictive prosecution. Really quickly, as far as the guidelines calculations, this clearly is not a murder under conduct. The facts here suggest a sudden... Well, I thought Mr. Ball in the state court pled to murder of a police officer. And there's lots of evidence in the record from the other officers who were there that it was a premeditated murder. I'm mystified as to how you say this was not murder. Well, when, again, Mr. Ball is negotiating a plea agreement or a plea offer in court, he was not, you know, pled not guilty, and I had a jury find that. A plea bargain under state or federal, it's a give and take. You're getting something, you're giving up something. He's happy to plead to the crime of murder if it's going to result in something... Yeah, but why doesn't that end your argument here? I don't understand how you can argue against that. Because over here, under the sentence guidelines, we're having to characterize what that conduct really means. We're not saying, okay, the guidelines suggest that we just rely on the characterization of the state. We're coming up in federal sentencing guidelines with our own characterization of that act. And they're under 2K2-1-4, I mean, 0.1-0.4, we are recharacterizing that behavior. So, all right, even if we go down that road, why wasn't the evidence more than sufficient to show murder? Because when you look at the facts and circumstances, murder requires an attempt to kill from the beginning, premeditated. So he pulls the gun out of his waist and brings his arm up to the man's head and shoots him point blank into the forehead. And when does that happen? And do you think that's not premeditated? It's not, and let me explain why, if I may. Officer Dwayne is watching from, he's with the driver in the back of the car, he's watching the officer interaction with Ball. First of all, if Ball had the premeditation to commit murder, he could have shot the officer upon his approach to the car. That's a different time. We have to look at the time he committed it. When he committed it, he pulled the gun out for some purpose, didn't he? He pulled the gun out of his waist. It didn't go off accidentally. He pulled it out of his waist and he had to raise the gun to the head level and shot him in the forehead. That's deliberate as can be, right? That is the act, but every crime also requires a specific criminal intent. Premeditation is intent, not act. So that is why I'm saying it. Are you contending this was an accident? No, what I'm contending is that this is a manslaughter. It is a heat of passion upon a sudden quarrel and provocation. You're suggesting that when he took the gun and put it at his forehead at point blank, he didn't intend to kill him. That is not what I'm saying at all. If you're not saying it, then isn't that the conclusion that must be drawn? That he intended to kill him? No. What I'm arguing is that this is evidence of heat of passion, and heat of passion negates malice, and malice is required in order to support the criminal intent. Right, but twice that day, the defendant had said, first, I'll end up killing something, and then he said, apparently twice to his girlfriend, if anybody gets in my way, I'm killing anybody. Why isn't that fairly clear proof of premeditation without anything else? He didn't say I'm going to kill an officer if he tries to arrest me. First of all, he says I'm going to kill something, not someone. If anybody gets in my way, I'm killing anybody, and the officer was in his way. Okay, and so again, I bring the court back to the fact that led up to the killing. It's not just the moment before the trigger is pulled. Again, if he had the intent to kill the officer as he's walking towards the car, he had every opportunity to do so. He had every opportunity to do so while interacting with the officer before he even gets out of the car. Dwayne testifies that he hears Walter's voice raised, and that was unusual for him because that didn't happen. That suggests a sudden quarrel. When he gets out of the car, there is wrestling. Walt is resisting the arrest. That is sudden provocation, and that is action in the heat of fashion. His body is jammed into the car. He's pressed against it. There are activities and actions that are occurring prior to the shot, and I don't think the court can ignore that. All of that suggests that there is not a specific intent to kill an officer because that could have occurred way before the time when that occurred. Also, Dwayne talks about being next to Walter, pressing Walt's chest into the car, and that Dwayne is taller. By the time Walt wrestles his arm free and he turns to shoot, Dwayne happens to be at that height that he fires because that is where he's able to raise his arm. I guess the evidence suggests that had Walter been as tall as Dwayne, he probably would not have been able to shoot in that exact spot. I think we have to consider all of the facts and circumstances. This, again, all had the opportunity to shoot to kill before we even got to the point where he shot, and he didn't. I don't know why that eliminates premeditation. In other words, you're arguing that premeditation must occur as early as it's possible to kill. My suggestion is that he could have formed an intent, a complete premeditated intent, when he's pressed up against the car. When he turns, he has the first opportunity to carry it out and did. It seems to me that supports premeditation as much as planning ahead of the time, although he did have these statements. He basically didn't want to go back to prison. He said, I'm going to kill anybody a mile away. I agree with the court that premeditation can be formed at any time. That part is true. I'm also addressing the issue of the earlier statements that he made and that his actions at the time on the scene negate those because he did not. His initial response was not to shoot. Okay. Thank you. We'll hear from Mr. Cook. I think you're unmuted. I am. Thank you, Your Honor. I'm now unmuted. May it please the court, I'd like to start with this premeditation issue the court was just discussing. In paragraph 14 of the PSR, which the district court adopted, the PSR says Mr. Ball told his girlfriend that he had four and a half years of comeback time hanging over his head, and he would shoot it out with the police before he would go back to jail. The PSR continues that Ball twice told his girlfriend, if anybody get in my way, I'm killing somebody. Then, of course, we have this text message that also corroborates that he said he would kill something in his words. There was testimony at the sentencing from Officer Christopher Duane that said there was no attempt to grab the weapon from Mr. Ball. And we know that Mr. Ball armed himself before the confrontation with the police officers, and then he shot Special Agent Walter in the head. Those facts are more than sufficient for the district court to find that this was premeditated murder. There's no claim here that the district judge made legal error in the test that he applied for determining what is first degree murder. So we really have just a question of whether the district court's findings are clearly erroneous. And on this record, it's impossible for this court to say that the findings are clearly erroneous. So I think that addresses the murder cross-reference. I would like to turn back to the, unless the court has questions on the murder cross-reference, I'd like to turn back to the double jeopardy and vindictiveness claim. On the double jeopardy claim, we believe that that's controlled by Gamble. And the fact that there are distinct sovereigns here is sufficient to resolve any double jeopardy concern. In Gamble, in the Supreme Court's opinion, the court did not discuss why the government felt under the Pettit policy that there were a sufficient federal interest in that case, where Gamble, of course, there was a state prosecution for felon in possession, followed by a federal prosecution for felon in possession. So they were identical crimes other than the fact of the sovereign. At the oral argument in Gamble, the government explained that its reasons for having the successive prosecution in that case was that they have, we have an initiative for focusing on recidivist offenders under the felon in possession statute, and that that is an effective strategy for reducing crime. And that was the reason the government gave up under the Pettit policy for that successive prosecution. No one has ever suggested that, of course, that defendants have enforceable rights under the Pettit policy. And this court has held that there are no enforceable rights for defendants under the Pettit policy. Moreover, no court, to my knowledge, has ever suggested that if the government followed the Pettit policy, that that would trigger a vindictiveness claim. And I don't see how that could be reconciled with the Supreme Court's precedent about due process claims. For example, under Medina v. California, the Supreme Court has said that it doesn't use the due process clause to alter the scope of specifically enumerated rights. And here, the specifically enumerated right would be the double jeopardy claim that the Supreme Court considered in Gamble. And so I don't think that it would be appropriate for a court to use the due process clause to try to change the contours of the double jeopardy right. But in any event, it's easy to see in this case that this is the kind of prosecution that falls within the heartland of the considerations under the Pettit policy. The Pettit policy allows the government to do successive prosecutions when a case falls squarely within an enforcement priority. And as in Gamble, an enforcement priority is dealing with recidivist offenders who are particularly dangerous, who possess firearms. This defendant obviously fits that profile to a T. The Pettit policy also considers the severity of the harm. And in this case, you have the most severe harm you could have from a felon in possession violation, a murder. It also isn't just a murder, it's a murder of a police officer. And the government has a strong interest in ensuring that law enforcement is protected. Moreover, a defendant who's willing to kill a police officer shows a particularly heightened lawlessness that raises that defendant's dangerousness. So those enforcement priorities are clearly permissible under the law. And I don't think that it's possible to say that there is a unconstitutional motive at play that would trigger vindictiveness. Unless the court has other questions, I'm happy to rest on our briefs, but also more than happy to answer questions. Thank you, Mr. Cook. Ms. Renee, you have some rebuttal? Yes, thank you. Again, you know, the government just keeps repeating that they have the ability to act in certain ways after the fact. It just does not explain if they have all of these legitimate interests and they want to, you know, vindicate these recidivist issues and stuff. Well, I think they... If I understand correctly, I understand that the federal government, as a matter of discretion, is also willing to have the states vindicate its interests. And they apply this successive prosecution only when they conclude that its own interest, the federal interest, was not adequately vindicated or served in the state court proceeding. And so that's necessary to be successive. And of course, the Pettit policy explicitly justifies that. I don't think we should be citing that as law or reliance. We cite that as a course of policy and conduct that the prosecution takes. But it does seem that the Supreme Court was addressing right in that heartland. And in Jackson, we did the same thing. Did not find any impropriety in this type of procedure. But you're emphasizing, which is a factor, I understand that, that the successive prosecution can look like they're punishing a man for getting a benefit in the state court. That's your argument. That's correct. That would be pretty unfortunate. Yeah, yeah, I understand that. But the other question is, when you have separate federal and state interests, and the federal interest is not satisfied in the state prosecution or vindicated, then it's hard to attack the notion that the feds can still vindicate their interests when they see they have not yet been vindicated by the state process and they want to have their own law enforced. That's what happened here, I think. I always look at this as, you know, in a situation, let's say going way back to like the Rodney King case, when the state prosecutes and, you know, the defendant is acquitted. And then the government comes back and prosecutes and gets a conviction because they're vindicating an interest. In that situation, people may quiver with the double prosecution, but we're only getting one sentence. And so, you know, I think that, you know, again, the policy is not the law. Well, you're only getting one sentence here, too. Well, you're getting two, actually, because he already was found guilty. Well, implicit in the use of the firearm conviction in state court is the possession of the firearm. That was the mechanism by which the officer was killed. Except the federal crime also requires that a person be a felon, whereas the state crime does not require that he be a felon. Well, possession of a firearm by a convicted felon in state court does require that he's a convicted felon. Sure it does, but he was charged with murder, wasn't he? I'm sorry. I'm sorry. Yes, he was charged with murder, but I'm talking about the mechanism by which he committed the murder. Necessarily, he had to possess the firearm in order to carry it out. But in order to, you're saying the double jeopardy or the blockburger overlap, the notion is the state crime has to have elements that the federal crime doesn't have, and the federal crime has elements that the state crime doesn't have. And I was just pointing out that the federal crime requires that he be a felon and possess a gun, whereas the state crime does not have that element. Well, and as far as, if I may just address that. Yes, please, go ahead. Sure. Thank you, sir. As far as the double jeopardy, I'm also concerned with the, where does the doctrine of collateral estoppel come? If the government is able to just, you know, use this policy to avoid the straight up double jeopardy, double prosecution, double sentence, does the concept of collateral estoppel have no meaning? I mean, it's a pettit policy. You raise a very serious point, and I think the academy and lawyers are disagreeing whether this whole notion of double jeopardy under Gamble, before Gamble, was appropriate. I mean, I think it's a serious argument. But as you know, the Supreme Court did consider all of this pretty thoroughly in Gamble, and preserve that doctrine, the two sovereigns and the two different bodies of law. If I may just really quickly. I don't know if we're free to move about in that area. Just really quickly, I'm bringing it up in terms of the government's pettit policy, because it's not a law. It's not a, you know, that's their own policy. You're absolutely right. Whether or not that is basically using a policy to overturn years of precedence of the doctrine of collateral estoppel. Thank you very much. We appreciate that. Thank you. I understand, Ms. Renee, you were court appointed. Yes, sir. And again, I want to recognize that this is so important. And it's, of course, very important. In this case, you've raised some very difficult questions. I think some of them may have been resolved by the Supreme Court, and we're not free to move around. But other parts, I understand your arguments. At this point, we would come down and greet counsel and thank you for your arguments. I can't remember whether, Ms. Renee, you've been before us, but Mr. Cook's been before us many times. We've always enjoyed his arguments. I was there a year ago. Thank you very much. I'm sorry. I was there a year ago under Patricia Nagel. Oh, okay. Thank you. Well, thank you. Was I on a panel with you? Yes, you were, in fact. Oh, my gosh. I apologize that I haven't recognized. And I would have clarified this when I came and shook your hand. Thank you very much. Thank you. We'll adjourn court for the day. Okay. Thank you. Have a good day. Thank you. You, too. The Honorable Court stands adjourned until this afternoon. That's that of the United States and this Honorable Court.
judges: Paul V. Niemeyer, G. Steven Agee, A. Marvin Quattlebaum Jr.